## JAMES WILLIAMS v. THE STATE.

### No. 7007.   Decided October 4, 1922.

Motion for rehearing granted December 13, 1922.

**Aggravated Assault—Plea of Guilty—Representation by Counsel—Fair Trial—Rehearing.**

While the penalty in the instant case is only a fine of $25, yet the gravity of an infringement of the guaranteed right to be represented by counsel, of a public trial, and a knowledge of the accusation against the defendant, all appeal to this court very strongly, and upon more mature consideration of this record, the judgment is reversed and the cause remanded, it appearing that the defendant has not had a fair trial.

Appeal from the County Court of Wichita.  Tried below before the Honorable Guy Rogers.

Appeal from conviction of aggravated assault; penalty, a fine of $25.00.

The opinion states the case.

*Mathis & Caldwell,* for appellant.—Cited, Dawes v. State, 222 S. W. Rep., 560.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appellant was fined $25 upon his plea of guilty to aggravated assault.

Upon the night of March 10th, 1922, accused had some trouble with his wife.  Her sister, who was present at the time, sent a small boy to report it to the officers.  The constable received the report and arrested appellant as he was trying to catch a moving freight train. He gave his name to the officer as Jess Sawyer, but the negro boy insisted that appellant was the right negro.  He was placed in jail by the constable and an entry made on the sheriff's jail docket that he was held for fighting or an affray.  On the morning of March 11th he was released on bond which was obtained by his attorney.  Soon after his release on this bond the constable learned of it and demurred at the small amount of bail, insisting that he was guilty of an aggravated assault, whereupon he filed complaint before the assistant county attorney charging appellant with aggravated assault.  Information upon this complaint was immediately filed in the County Court which was in session, a capias procured and the constable again arrested accused on the latter charge, and brought him into court.  The regular judge was absent at the time, but a special judge accepted his plea of guilty. The point is made that the special judge was acting without authority. The record is silent as to the manner in which he is supposed to have been authorized to act in the capacity as judge, but we regard that as unimportant in view of the fact that the regular judge came in during

the proceedings, questioned accused, again took his plea of guilty, assessed the fine and made the docket entry. Two days later a motion for new trial was filed in which it was claimed that (a) the plea was taken without notice to appellant's attorney; (b) that the constable induced accused to enter the plea by threats, promises and fraud, being led to believe by the constable that to enter the plea of guilty would be the best course to pursue; (c) that accused is not guilty of the charge, but has a good defense thereto.

It appears from the record that when the officer complained at appellant having been released under bond for an affray, insisting that he was guilty of an aggravated assault, the deputy sheriff telephoned appellant's attorney that a larger bond would be necessary and was told the new bond required would be furnished, but before the attorney came the plea of guilty had been entered. The other matters alleged in the motion were controverted and evidence introduced upon hearing the motion. The constable denied having used any coercion or persuasion of any kind to procure the plea of guilty, but asserts that accused said he wanted to plead guilty before but his attorney objected. It is made clear from the statement of facts that accused waived the two days which he might have claimed to prepare for trial, waived a jury, and entered his own plea of guilty. According to the testimony of appellant and his wife he was not guilty of the charge, but his sister-in-law makes out a clear case against him. In view of article 582 C. C. P. permitting plea of guilty in misdemeanor cases to be entered either by the accused or his counsel in open court, and that the lowest fine was assessed, in the instant case, and the question of improper acts on the officers' part to induce the plea and the denial of, guilt turning upon issues of fact which were determined by the court against appellant after hearing evidence thereon, we are constrained to hold that setting the judgment aside would be unauthorized by us. Under a somewhat similar state of facts this court declined to disturb a judgment in Kirk v. State, 60 Texas Crim. Rep., 172, although the punishment there inflicted was much over the minimum fixed by the statute. Meeking v. State, 67 Texas Crim. Rep., 69; 148 S. W. Rep., 309 and Wagner v. State, 87 Texas Crim. Rep., 47, 219 S. W. Rep., 471, cited by appellant as supporting his contention present quite different states of fact from those disclosed in the present record, as an examination of those cases will reveal.

Believing we would not be justified in disturbing the judgment, the same is affirmed.

*Affirmed.*

### ON REHEARING

### December 13, 1922.

LATTIMORE, JUDGE.—We have carefully reviewed the entire record herein in the light of the able motion for rehearing filed on behalf

of appellant. This is an old case. The accused is a negro working in a barbershop in Wichita Falls. He was arrested on the night of March 10, 1922. At attorney was obtained and release from jail by making bond followed on the morning of the 11th. The charge against appellant on the books of the sheriff was that of an affray. The bond made·was for that offense. The original arrest had been made by one Bean, a deputy constable of the precinct, who admitted that at the time of making said arrest he assaulted appellant by slapping him. No reason for such act is shown or suggested. This may be deemed significant of the attitude of Mr. Bean in view of the other things attributed to him in this record. When Mr. Bean learned that appellant had made bond on the morning of the 11th, he went to the office of the county attorney and told an assistant therein that ·Mr. Caldwell, an attorney, had made bond for the negro. Mr. Bean then proceeded to make a complaint on information against appellant charging him with aggravated assault. This offense is within the jurisdiction of the County Court, and process from such court ordinarily is executed by the sheriff, a county officer, though a precinct officer may execute same. After the complaint was filed in the County Court Mr. Bean took the capias himself and proceeded to the barbershop. Appellant had been there about twenty minutes following his release on the first bond. Bean again ʲarrested him. Bean knew the negro had employed a lawyer to defend him in this case but did not notify said attorney or take the negro to see him, nor did he take him to jail or any where else that one arrested might ordinarily be found . He took appellant to the courtroom. Interesting contradictions appear in the record between Bean and the negro as to what was said on the way from the barbershop to the courthouse. The negro says that Bean told him to come along, that he was needed at court, and that he had better plead guilty. He says he told Bean he had not done anything to plead guilty for. Bean did not tell the negro what he was charged with, and appellant swears that he did not know what was so charged. Appellant attributes to Bean the following language: "I want to show you guys something; if you had pleaded guilty you would have been out of it." Appellant also swears that the night before when Bean arrested him he told him he had better plead guilty, and that on the way to the courthouse on the morning of the 11th Bean repeated this, and when he brought him in, Bean again said the same thing. When Bean reached the courtroom with appellant, Judge Rogers, the county judge, was not there. Another man by the name of Jones, characterized by appellant's counsel in his motion for rehearing as a "pinch hitter" was there, however, and seemed ready and willing to step up to the bat and land on appellant. Why or how this man assumed to act in the premises is not shown, but it is made to appear that he entered a plea of guilty against appellant and fined him $25. About this time the county judge put in an appearance. We find the following in the statement of the facts which were heard by the court upon presen-

tation of the motion for new trial as part of the testimony of appellant:

"I talked to Judge Rogers. He asked me if I wanted to waive the two days, I did not want to go back to jail. My lawyer came on up here, he had already made one bond for me and I had been rearrested. The officer told me the easiest way out of it and I wanted to go back to work, I told the officer I· would plead guilty and my fine was set at $25. I did not beat my wife and did not put my hands on her. I did not know who else was with the officer when I was arrested. The officer hit me twice, I was willing to come with him.

Examination by the Court. The court did not ask me if I was guilty, that morning, when the officer brought me in, he told the judge how it was, after a little while you came in and stood right here, you asked me some question about waiving a jury and about two days, you said, to me that I was charged with aggravated assault and I think I said I was guilty."

That he insisted on a plea of guilty by appellant was denied by Mr. Bean: Appellant swore that Bean hit him twice at the time he arrested him, but this Bean partially denied, saying that he only slapped appellant once and was not very rough.

This is only a misdemeanor case, the accused is only an ignorant negro and the penalty only a $25 fine, but the gravity of an infringement of the guaranteed right by the Constitution to be represented by counsel, and of a public trial, and to be furnished with the knowledge of the accusation against the accused, all appeals to us very strongly upon more mature consideration of this record. In view of the fact that appellant swears that he had a lawyer with whom he was afforded no opportunity for consultation after the second arrest, and that he did not know the offense with which he was charged, and the reasonable likelihood of his not understanding what waiver of a jury meant and the apparent probability of pressure brought to bear upon him by the officer, would seem to raise serious doubt as to the fairness of the proceeding as a result of which the fine was imposed upon him. Neither the county judge, nor the assistant county attorney, nor the deputy clerk who were present testify to any explanation made to appellant as to what waiver of a jury meant, nor do any of them say that appellant ever agreed to waive a trial by jury. Mr. Bean was the only witness who testified to such fact. The alleged "pinch hitter" appears in no other inning save the one in which he affected to act as county judge in the absence of Judge Rogers. Upon the hearing of the motion for new trial Judge Rogers questioned appellant, who replied as follows as stated above: "You told me I was charged with aggravated assault, and I think I said I was guilty." No one seems to have explained to the negro what aggravated assault meant, and it appears from his own testimony that he says he is not guilty of striking his wife, that he never laid hands upon her, and she appeared and testified to the same facts.

93 T. C.—7

In Meekey v. State, 67 Texas Crim. Rep., 696, this court ordered a reversal because it appeared probable that a plea of guilty was entered by an inexperienced youth because of pressure brought by officers and of his fear that if he did not plead guilty other cases would be filed against him. In Wagner v. State, 87 Texas Crim. Rep., 47, a reversal was ordered upon a somewhat similar state of facts as in the instant case. No waiver of a jury was there shown, nor that the appellant understood what this meant.

We refrain from a discussion which might be deemed in any way a criticism, but believeing that under the facts shown on the hearing of the motion for new trial appellant was entitled to the presence and advice of the counsel whose employment in the case was known to the officers of the court; and to a better showing of knowledge on his part of what was the offense charged against him; and of his understanding as to what was meant by waiving a jury when brought before the court; and the likelihood of undue pressure brought upon him to plead guilty to some offense,—all are sufficiently reflected in the record to lead us to serious doubt as to whether that fair and impartial trial guaranteed by law has been had by appellant. Such being our conclusion, the appellant's motion for rehearing will be granted, the affirmance set aside, and the judgment now reversed and the cause remanded.

*Reversed and remanded.*